We'll hear argument first this morning in Case 13-894, the Department of Homeland Security v. Robert MacLean. Mr. Gershengorn. Mr. Chief Justice, and may it please the Court. In Section 114R, Congress directed TSA to promulgate regulations prohibiting disclosures that would be detrimental to the security of transportation. The information covered in the TSA regulations ranges from flight crews' plans for dealing with a hijacking attempt, to vulnerabilities in airport security systems, to the kind of Federal Air Marshal deployment information at issue in this case. Under the Federal Circuit's construction of the whistle-blower statutes, any one of TSA's 60,000 employees may override TSA's expert judgment and publicly disclose sensitive security information in that employee's possession based on that employee's reasonable belief about what public safety requires. At what point was MacLean told that this qualified as SSI? Correct me if I'm wrong about this, but as I understood it, he was fired. And it wasn't until the case was before the MSPB that a determination was made that this information qualified as what you call SSI. Your Honor, I think that's not quite correct. Let me see if I can work it through. The information about Federal Air Marshal deployment has been prohibited by regulation for more than a decade. It was prohibited expressly prior to 9-11. It was in regulations that were promulgated by TSA after 9-11. But when was he first told? He was told that Air Marshal deployment information was SSI in the training and it's in the regs. He argued before the administrative judge that he was unaware that this information was SSI, and the administrative judge rejected that contention. That's at Petitioner's Appendix from 100A to 103A. What the administrative judge found was his testimony that he did not know this was SSI was inconsistent, nuanced, and evasive, and the judge rejected that contention. What happens in the TSA final order, which I know Your Honor is referring to, is that it can be appealed to the court of appeals under 49 U.S.C. 46110, which gives a person agreed by a TSA order 60 days to appeal something to the court of appeals. Mr. McLean did so, and the Ninth Circuit rejected his argument that this was retroactive classification of SSI. So I think as the case comes to this Court, there really is no dispute that he understood that this was SSI. But it certainly is — will in many cases be a close question. I was very surprised to see in your reply brief the recognition that the employee can, just to quote it, can tell the media that Federal air marshals will be absent from important flights, but declining to specify which flights. I think it would be very difficult to figure out what's SSI and what's not, given that kind of fine line. And could he say there were — air marshals have been cut 50 percent from, you know, transcontinental flights? So, Your Honor, there may be close cases. Again, the administrative judge heard this contention from Mr. McLean and rejected it. Heard what contention? That he did not know that this was SSI, that the Federal air marshal deployment — Okay. But what about my question? Could somebody say that the number of air marshals on transcontinental flights has been cut 50 percent? Your Honor, I think that without specifying — I don't know the answer to that. I'm not someone at TSA who has — So how is Mr. McLean supposed to know? Because Mr. McLean — Mr. McLean is — was trained to know — was trained in SSI, received training on that — on that. And as I say, Your Honor, there is no dispute that he did know that this was SSI. Details of Federal air marshals deployment — I'm a little confused. I'd like Justice Ginsburg. I thought from the briefing that that was done generally beforehand, that something would be distributed to people with a confidential notice on it. So that it would be marked SSI. That this was SSI, but this particular information wasn't so designated before the release. That's correct, Your Honor. But the — there's no doubt the best practice is to mark information SSI. But information is before it's going out. Correct. But SSI can — information can be SSI whether or not it is marked — whether or not it is marked that way. And again, the regulations are clear on this, that details of Federal air marshal deployment are covered as SSI. And this issue was litigated before the administrative judge. If there were no regulations, just the statutes on the books, at that point, are there any prohibitions on disclosure or — there can be no SSI without at least some regulation? That's correct, Your Honor. But — and so if I could turn to that, what the Federal Circuit held — the Federal Circuit held that the whistleblower protections extended to this information. But properly read, 2302b8a squarely forecloses that result. What that section does is exempt from whistleblower protection information that is specifically — disclosure of which is specifically prohibited by law. The Federal Circuit found no specific prohibition here, indeed, no law at all. But under the SSI regime, disclosure was prohibited both by the statute that mandated nondisclosure regulations and by the nondisclosure regulations. Scalia. It wasn't prohibited by the statute until there were regulations, right? That's correct, Your Honor. But there were regulations. It's prohibited by regulations. Let's not play games. So, Your Honor, I don't — I think we would prevail even under that interpretation, because it's prohibited by regulations that the statute mandated to be disclosed. But I think under this Court's decisions in Robertson and in Sims, which addressed the question of specifically exempted from disclosure by statute, and this Court said that in Robertson, a regulation that gave to the administrator authority to — to exempt from disclosure after a public interest weighing, and in Sims, where the Court had a statute that just gave to the CIA director an instruction to protect sources and methods. And the Court said in both cases, that was specifically exempted by statute. So the mere reasoning is — apparently came as a surprise to the government lawyer in the court of appeals. He said, I'll be as clear as I can. Specifically prohibited by law here means statute. So, Your Honor— Again, McLean is supposed to know something that the lawyer, government lawyer in the court of appeals does. So, Your Honor, I think that that statement — the lawyer did say that, but the lawyer went on to explain that regulations promulgated pursuant to a statutory mandate would control, and that's what the Federal Circuit understood. But now you seem to be arguing that it's not simply mandated by statute. You use — the two FOIA examples that you gave was authorized or permitted. So what is your position today? Before the Federal Circuit, it seems to have been this is statute, not regulations. Now it's some regulations, but we don't know whether regulations that are mandated or regulations that are merely authorized. What is it? So let me be as clear as I can. We believe that it is specifically prohibited first by a statute, which was the argument that was made clearly below and by — and in the briefs here, and that this qualifies. Second, we think that it is prohibited by regulations that are prohibited pursuant to a statutory mandate, that promulgated pursuant to a statutory mandate. And if I could point the Court's attention to page 1510. Kennedy, I must have misunderstood. I asked you whether or not the employee could be terminated if only the statute were on the books and no regulations yet. And I thought you said no. Because there would be no SSI designated. All right. But once there's a — So then the statute alone does not carry the day. So, Your Honor, I don't think that that's the way the Court looked at it in Robertson and the way the Court looked at it in Sims, because in both of those cases, there had been no determination not to disclose until the administrator made the determination. And yet the Court found that those were specifically — that they were specifically — nondisclosure was specifically authorized by statute. If I could just finish the answer to Justice Ginsburg and to the Chief at — to the Chief Justice. At page 15A of the Petitioner's Appendix, what the Federal Circuit said was regulations promulgated pursuant to Congress's express instructions would qualify as specific legal prohibitions. Both arguments were— I'm sorry. What was that quoted from? That was from the Federal Circuit's decision at 15A. It's 15A attached to the petition. So the Federal Circuit understood, Justice, as they said, that regulations promulgated pursuant to Congress's express instructions would qualify as specific legal prohibitions. Counsel, would you qualify, assuming — because Congress disagreed with Robertson and didn't it, and it then amended FOIA? Congress amended FOIA, yes, Your Honor. All right. Sotomayor, assume that we read statute more or less in the way that FOIA does. Okay. The amended FOIA. Do you meet the amended FOIA criteria? We do, Your Honor. All right. And which prong of it and why? We meet the — first of all, I'd just like to say that the Senate legislative history expressly considered this very question and said that if that — that we — I'm going to step back one second, Your Honor. We don't think that you need to meet those amended — the amended FOIA. But taking that as a given, Your Honor, what the Senate report said — Seems to be eminently reasonable despite Robertson. It seems — Your Honor, I once — But that's basically what you're arguing is one of the two FOIA exceptions. So tell me which one. So it's the FOIA exception, Your Honor, that establishes particular criteria for withholding or refers to particular types of matters withheld. And we think in the legislative history what the Senate report said was that the SIMS statute, the section 102d3 of the National Security Act of 1947, would qualify. And that's a statute that said the director of CIA shall be responsible for protecting intelligent sources and methods from unauthorized disclosure, period. That was all it said. That's no different from our statute. And we think that even if this — so we think that — Yours is, I think, a little bit more specific than that. Perhaps more specific. So we think that it follows a fortiori that if the Court relies on statute, that we meet that statute. And, of course, that makes perfect sense. If the Chief Justice were to — Oh, my goodness, I'm not sure. I mean, when you have a CIA statute, they say you cannot disclose agents, what was sources, and what does it say? Sources. Your Honor, it says the director of — Sources and methods, intelligence sources and methods. And there's another one that refers to critical infrastructure information. All right? If I accept those as being sufficiently specific or having sufficient criteria, I look at Yours. And Yours says there shall be regulations prohibiting the disclosure of information obtained or developed in carrying out security. And now here's the criterion. If the undersecretary decides disclosing information would be detrimental to the security of transportation. Now, that, it seems to me, could include everything from a spark plug that is deficient in the airplane to a terrorist. And I don't — I mean, I don't know how I would judge that, but I mean, to the ear, telling the CIA you can't disclose sources seems a lot narrower than telling the Department of Transportation or Homeland — what is it, DOT, that everybody in charge of airplanes, you have a regulation detrimental to the security of transportation. I don't know. How would you decide it? I mean, it sounds to me that that's quite a lot broader, since so much can be detrimental to the security of an airplane. So, Your Honor, a couple of points on that. First of all, the Court interpreted the statute in Robertson to be sufficiently specific. And in Robertson, what the Court's — what the statute said was an administrator shall order information withheld from public disclosure when, in the judgment of the administrator, the disclosure would adversely affect the interests of the person and is not required in the interests of the public. It's a little bit less broad. Breyer, but that's the one before. That's the one this Court found that may be an issue. Breyer, that's what this Court did. But subsequent to that, Congress amended the act, as was just pointed out, in a way that says you have to have specific criteria. But if I may, Your Honor, it amended FOIA, but strikingly, the Court — the Congress did not amend and include that language when it passed the CSRA. In fact, what it was— Okay. I'll look at that. I'll look at that. I'm not — I can deal with that on my own. But I do have a question that only you can deal with. And the question I have that only you can deal with is this. I mean, obviously, it's a matter of concern that someone could go around and say there are no marshals on this airplane. That is obviously a matter of concern. So if, in fact, that was a real worry about blowing up airplanes for that reason, could the President then simply use the second prong and say an executive order will require that to be kept secret? Your Honor, the President could do that. All right. Now, in doing that, in doing that, does it automatically fall into the 400,000 regulations that govern Defense Department security information? Or could he say, for the purpose of this statute that we're talking about now, I determine that it should be kept secret, therefore, there is no prohibition against people communicating that information with Swedish people, British people, all kinds of airline officials, et cetera. Now, you're saying, yes, he could do that under this second prong. Yes or no? Yes, because there's an executive order that has to be kept secret. Fine. If he can do that, then there is no worry. Your Honor, I don't think so. Because if this — am I right? There is no worry. No, Your Honor. Because if, in fact, this is going to lead to blowing up airplanes, all he has to do is use that second prong. Now, you say I'm not right. Why not? You're not right, Your Honor, because that is fundamentally inconsistent with the judgment that Congress made that the SSI system should coexist with the classified information and with executive orders. What Your Honor is saying is that it doesn't matter that the SSI system that Congress set up doesn't — wouldn't work and can't function because the President, by executive order, could fill in the gap. I'm not saying anything like that. I am worried about a practical matter. I am worried about the decision of the Court against you leading to somebody blowing up an airplane. And I suddenly thought, as a practical matter, that is not a serious worry, because the President can always use the second prong to keep people from disclosing the information that you don't want disclosed. And so far, you've said I'm right. And now you got into a legal argument. I'm not talking about a legal argument. So, Your Honor, I think such a system could be devised. But I think it would be a very odd construction of the statutes the Court has before it to say that we are going to undermine and eviscerate the SSI system that Congress by statute said it would not be feasible. Oh, no. I am just worried. Look, let me ask my question. And my question is, if for other reasons I decided you were wrong, would I still have to face the problem of airplanes being blown up? I'm focusing on this because it's very important to me. And you have answered that question. If for other reasons, and you, of course, think you're right, but if for other reasons I thought you were wrong, I wouldn't have to worry about that practical problem because there is prong 2. And it's important to me that you answer yes or no, and I take your answer to be yes, you are right as a practical matter. I think it is possible that the President could entirely duplicate the SSI system that Congress set up to help to prevent that practical problem. Well, to follow up on that, if the President proceeded along that path, what would be the consequences with respect to the people, the class of people who would be able to have access to this information? Would this be classified information, and then only people with certain security clearances would be able to know? So the system could not work, Your Honor, if it was a classified information system. So Justice Breyer's system, the answer is we would be in uncharted territory. I don't know as a fact that the President – the President would have to essentially duplicate the SSI system, and it's precisely because it doesn't work under the classified information system that already exists, because this is information that is very sensitive, yet has to be shared among people who are operating our transit system, so that flight attendants need to know. Yeah, but what's so hard about duplicating the SSI system? He signs an executive order saying duplicate the SSI system. And right away, the problem we have here of people like Mr. McClain revealing information is not a problem anymore, because it is then protected by executive order. So, Your Honor, I just – I think that that would work, but I have to say I'm not sure of the ins and outs. But I do think it's critical. It would have one good effect, and that is it would make sure that the matter is important enough to occupy the President's attention, and is not so insignificant that an agency that just doesn't want any whistleblower, doesn't want any criticism of what it's doing, can pump out these regulations. It would have that – that salutary effect, wouldn't it? Your Honor, it might have that effect, but I think that that's the judgment that Congress made. What Congress did was set up this SSI system knowing that the President had authority under the executive order, knowing that the classified information system was set. And what Congress did – and knowing, in fact, what these regulations said, the very regulations in basically the same form that we have today. When Congress created – moved TSA into the – into DHS as part of the Homeland Security Act, these regulations were already there. And Congress had them before it. And what Congress said was that the SSI scheme was important. Kagan. And I'm not sure that you have a statutory argument to make, but the way that the President would do this if he wanted to do it, would be by a new executive order, or in fact, would this old executive order, 13556, which deals with controlled, unclassified information, is that what the President would use? Your Honor, I'm not sure of the ins and outs of what the President would have to do. This is information that is shared outside of the government, which is what makes it a little tricky. These are – they are shared with – with flight attendants. They're shared with the school. Right. But I thought that that class of – that class of information, controlled, unclassified information, as opposed to classified information, could be shared outside the government, and Executive Order 13556 deals with that, and the President could simply make clear that that executive order applies to this kind of information. So, Your Honor, I just don't know the answer to that, whether that order would satisfy. I – my sense is that it would take a lot more than that to duplicate the kinds of SSI system that has been in place for over a decade and a half and that Congress signed off on. But it – and so the exact form of the executive order, it's not something that, quite frankly, I think we've contemplated here, because there is this regime that Congress had set up. Well, about – about the – you've talked about what Congress meant and set up. But the conference report says the language does not refer to agency rules and regulations. So whatever staffers prepared that, and I'm not suggesting Congress did, but whatever staffers prepared that, again, McLean had to know more than they did. So, Your Honor, I don't think that's right. And I think this is a situation – I'm going to make the initial point and then step back if I could and make a series of points on this. I think this is a situation in which the Court has – would be right to view that legislative history with some skepticism, and here's why. What Congress had before it was a bill that said – but from the Senate side – that said prohibited by statute. Had Congress passed that, we wouldn't be here making our regulatory argument. What Congress adopted was a provision that said specifically prohibited by law. A phrase that –  It doesn't say prohibited by law, rule, or regulation. It doesn't. It just said by law. That's what I'm saying. Elsewhere in the same statute, it says by law, rule, or regulation. What am I supposed to conclude from that? So I think what you need to conclude from that, Your Honor, is that the term by law has to exclude at least some rules and regulations, and we think that it does. It excludes those that are internal agency regulations and regulations relating to agency organization practice. How do I know that? Because that is the presumption that this Court set up in Chrysler. What Chrysler did was interpret the phrase authorized by law, and what the Court said that authorized by law meant had a well-established meaning. And that well-established meaning was that regulations that met the three-part test in Chrysler, that they were substantive regulations of a legislative type, that they were reasonably within the contemplation with Congress, and they were properly promulgated, were regulations that counted as by law. The Court expressly distinguished internal agency interpretive rules and agency rules of organization, order, and practice, and said those were different. We think that is the distinction that is in the statute. Scalia. If that is true and if that is so obvious, Congress would not have to have said by law, rule, or regulation. In the other provision, it could just have said by law, and what you said would automatically follow. No, Your Honor. The law, rule, or regulation is the formulation that sweeps in agency internal rules and regulations and regulations promulgated pursuant to the housekeeping reg. That is precisely the distinction that the Court drew in Chrysler, and it is precisely the distinction that we draw in the statute. When the statute says by law, rule, or regulation, it includes all lawfully promulgated regulations, including interpretive rules, including agency rules, procedure, and practice. When the statute says by law, what the Court, what is meant and what Chrysler said had a well-established meaning that would require a clear showing to overcome is that it includes statutes and it includes regulations that meet the Chrysler three-part test. So that is the precise distinction that this Court drew in Chrysler, and it is embodied in the statute. To read it otherwise is to say that Mr. Kershengrove, Chrysler was, it just said law. Law was not juxtaposed in the same sentence as another phrase that said law, rule, and regulation. So that would seem that juxtaposition of the two very different terms would seem to defeat the Chrysler presumption. So, Your Honor, the reason I don't think it does is because it is equally consistent with precisely the distinction that Chrysler drew between regulation, rules, regulations with the force and effect of law on the one hand, and internal rules and rules of agency, organization. Scalia. Boy, that is, that is so subtle that Congress is going to draw that distinction between substantive rules and procedural rules by saying law here and law, rule, or regulation there. You can spin out that argument, but the notion that this is what Congress had in mind when it enacted this thing or that any member of Congress had in mind when he voted for it, I find that hard to believe. So, Your Honor, the reason why I don't think you should find that hard to believe is the following. First of all, by going from by statute to by law, right, Congress went from a narrow or a narrow structure that would have plainly foreclosed regs and instead moved to a much broader formulation that this Court had given meaning in Chrysler. The second one is that there was one view that by going to law rather than statute, what was meant was to include judicial decisions. Your Honor, it does say that in the legislative history, but that's precisely why I think this Court should view that with some skepticism. It's hard to believe that the term by statute would not have included constructions of statutes that this Court made. And so to justify the move from by statute to by law to say we sweep in the Court's discretion, I think is a little hard to swallow, if I could reserve the balance of my time. Thank you, counsel. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. Congress enacted the Whistleblower Act to restrain, not to empower, agencies. Now, my friend's answer at the start of his oral argument was the specter of 60,000 people who are going to leak this information. We're not in a Chevron situation in which the agency is getting any sort of deference here. And as Justice Breyer's line of questioning, I think, points out, that is a red herring because Congress in B.H. of the Whistleblower Act dealt with precisely that. They gave a mechanism for the President to do that. Sotomayor, if the statute read, the disclosure of information detrimental to transportation safety is prohibited under the statute, and the TSA shall promulgate regulations to that effect, would that be pursuant to law under the statute? I don't think so. I'll explain why in a moment. And that's what I want to know. How specific does the Statute? Are we going to get to a point where Congress has to look at every category of information every agency deals with and make a law prohibiting the disclosure of that individual information? Not at all, Your Honor. So with respect to the backup argument of the Government 114-R, we have two different views, two different arguments. One is that 114-R doesn't prohibit. The other is that it's not specific. And your hypothetical deals with the first, not the second. So you've already said the Congress is doing the prohibiting, unlike 114-R, which as Justice Kennedy pointed out, doesn't actually do anything. You need the regulation. With respect to specificity, I think Congress has two different options in B.H. One is to pass a specific law. The opposite of specific is general. And I think the words detrimental to transportation security aren't specific enough. And if you need any illustration of that, just look to my friend's argument in the reply brief that the Chief Justice pointed out where he said that information that you could release information about how important flights weren't covered. The SSI regulations flatly call that SSI material. This is 49 CFR 1520.5, B.1 and 2, quote, information concerning the deployments and operations of Federal air marshals are covered. That is SSI material. And so we can't even give you the definition. Sotomayor, do you have any doubt that the – do you make the argument that the disclosure of this information didn't potentially harm transportation safety? Certainly. That's Mr. McClain's whole position, which is that he saved national security. This was a situation unfolding in real time in a 4-day period, and he did everything he could from going to the inspector general and to supervisor in a quick thing in order to save something that otherwise would have been detrimental to national security. Now, my other point about the specificity of it – And he was successful. And he was, and TSA admitted it was – Because they called off the cancellations. Exactly. The other point about – I'm sorry. Go ahead. The other point about specificity is Congress has a whole other way of dealing with it, as Justice Breyer pointed out, which is the critical information infrastructure regulation – regulations alike. So would you say that this statute is not specific enough for a FOIA request? If someone under FOIA had come in and asked for this information, they could have gotten it? Your Honor, 114R's first words are, notwithstanding FOIA, okay? And it only is notwithstanding FOIA. Congress is free to do precisely that with respect to the Whistleblower Act, either notwithstanding all laws or notwithstanding the Whistleblower Protection Act and pass the most general statute imaginable. It doesn't have to be specific. So you want us to de-cup FOIA from this? It would be okay under FOIA for the agency to withhold this information? That's exactly what Congress has said. Because you think it's – that you think it's – that particular types of matter to be withheld, you agree with the government that that includes this kind of material? It very well may satisfy FOIA, particularly because of the first clause, which is notwithstanding FOIA. So you don't have to deal with this. But here, the statute doesn't say anything like that. And so for that reason, it's not specific. Breyer, but the statute other than the FOIA Exemption 3 language doesn't talk about when a matter is kept secret by statute as opposed to by regulation. So given that it's all tied in together, it's very tempting to say I'll tell you when it's a statute rather than a regulation, and then you go and read the statute under the Exemption 3, and you say it's a statute when, one, it leaves no discretion on the issue, or, two, it establishes particular criteria for withholding, or, three, it refers to particular types of matter. So we look at the statute to see if it does that. Now, that's what I thought I was supposed to do, to decide whether it's the statute that's doing it or the regulation. And the one that gives me the most trouble on those three is the last one, because it does seem to refer to a particular type of matter, though in very general terms. But so what do you think of what I've just said? Your Honor, we think the best way of understanding specific is to think about its opposite, which is general, and detrimental to the security of transportation is general. Yes, if it refers to a particular, you know, it does refer to a particular matter. Well, any statute is going to refer to some sort of particular matter, but we think Congress had something deeper in mind. And of course, the freedom of information. Breyer. I see that. I see that. You'd have to say critical infrastructure facilities are on one side of the line. This is on the other. Now, what about the analysis I just went through? What do you think of that? Is that the correct legal analysis in your opinion? Well, I think not. I think you can pick any definition of specificity. My worry about adopting the FOIA one is, as Justice Scalia was pointing out to my friend, that this statute affirmatively distinguishes in B-8 between law, rule, and regulation in the first clause and law in the second. And I think Congress is saying, unlike FOIA, that rules and regulations don't themselves do the prohibiting. It is only law. That is why the phrase is specifically prohibited by law. There isn't anything like that in FOIA. And indeed, FOIA has two purposes, as this Court in Robertson said, one of which is to empower agencies. It has nine different exemptions all about empowering agencies. But the gravamen of your position is that after Congress enacted these statutes, anything that came within the WPA definition could be disclosed until Congress passed another statute. That's what you want us to hold. No, no, not at all, Your Honor. I think that as long as it either has a notwithstanding clause, as many things even before the Whistleblower Protection Act did have, or it has a specific prohibition about specific matters to be disclosed, unlike the general prohibition here, detrimental to the security of transportation, that's enough. But there's also a more fundamental purpose. Kennedy, where could I look to find examples of where before the regulation  Well, I'm not sure about airline flights, but, for example, 10 U.S.C. 2640H says, quote, "...the Secretary of Defense may, notwithstanding any other provision of law, withhold from public disclosure safety-related information." And so that is a notwithstanding any other provision of law. But that doesn't apply to this Respondent. I'm saying in general, Your Honor, Congress has available to us. You're saying that this Respondent, until there was a second statute, was not prohibited from disclosing anything within the broad reach of the WPA of uncovered a violation of matters relating to specific danger to public health or safety? That is correct, Your Honor. We are saying that. So Congress passed a statute saying, and we'll pass another statute sometime before this has any effect. Your Honor, Congress in 114R was not dealing with the Whistleblower Protection Act. The language at the start is notwithstanding FOIA. We certainly think Congress could deal with it if they wanted to, but I think as the brief points out, they likely won't. Why? Because people like Mr. McClain promote the national security. They don't harm it. Alito, can I ask you about that? You say in your brief, Mr. McClain contacted a reporter with a history of responsible reporting about TSA who maintains close connections with Congress. Now, suppose that he instead contacted a reporter working for a foreign State-controlled news agency, and the information was not quickly released to the public so that the information was out there and could have been obtained, perhaps by terrorists, before Congress was aware of this and before the agency was aware of it and before it was able to take corrective action. Would there be any reason why that would not fall under the statute as you understand it? Justice Alito, I don't believe the Whistleblower Act Protection Act deals with that. Of course, Congress could by circumscribing the act in various ways. But here's what I think Congress did in B-8. They said not just can Congress pass a specific exemption or a nonspecific one with the notwithstanding clause, they said the President by executive order can deal with precisely this problem, and it doesn't require classification, and it doesn't require somehow two systems that are going to. Breyer, in your view, you don't even need the President. In your view, the President wouldn't get involved because you have to have a very specific statute. That's your view of it. No, Your Honor. Justice Breyer, there are two different ways in B-8 Congress can work with the problem. Breyer, I know that. I'm just saying that you don't even get into it because it was in a regulation and not in a statute. And if it's not in a statute, then you don't even get into that. Right. I'm dealing with the circumstance that Justice Alito has posited in which you have 60,000 people who might leak to foreign media or something like that. And if the government believes that, they can solve that problem literally today by walking out of this courtroom, having an executive order that says SSI material, like the material here, air marshal information, is exempt from the Whistleblower Protection Act. Congress passed that. It's clearly in B-8. And as Justice Scalia says, that's the way to promote accountability. They didn't want unelected agencies, the FOX, to guard the penthouse. Well, that may be, but I doubt that if Congress had thought about the situation that I posited, they would be content with the possibility of a disclosure that wasn't really a disclosure to the full public. Well, I think, Justice Alito, Congress has dealt with this question about how to whistleblow, do you need an exhaustion requirement, and so on, and other things. And every single time, they've amended the Act four times, and every single time they've said the problem is not too many whistleblowers, it's too few, that Congress recognized it's really hard for someone like Mr. McLean, other whistleblowers, to go to the media, because they put their job at risk, they get fired, and then they have to spend years litigating, as this litigant has, just to get his job back. And they do that only in the name of public interest. There's no private gain or anything like that. So, Justice Kennedy, of course Congress can prohibit the disclosure of this information in general, and they have in 114R. The question before the Court here is, have they done so with respect to the Whistleblower Protection Act? Have they done something specific enough to deal with the Whistleblower Protection Act? And the answer to that, we think, is no, because Scalia, I'm a little concerned about your acceptance of the hypothetical that the whistleblower doesn't blow the whistle to anybody except the Soviet Union. You know, do you really think that that's what the statute means when it says to take or fail to take, or threaten to take, or personnel action with respect to any employee, because of any disclosure of information which the employee or applicant reasonably believes evidence is a violation of law, rule, or regulation? Grossman, don't you think it's implicit in that, that he's disclosing it to somebody who could remedy the problem, as opposed to an enemy? I think you very well may be precisely right. Our simple point here is that whatever that standard is, that's a constant in this case. And to the extent the Court is worried about it at all, I think Congress in B-8 provided mechanisms to deal with that, either a specific or nonspecific order, or an executive order that doesn't require classification. It doesn't require a marking up at all classification system. Sotomayor, you know, I'm troubled because, you know, the facts are very much in your favor here, because he disclosed it publicly. But under your scenario, or under your position, if he published every day until the executive order came out the schedule of which flights air marshals will be on, and he would come out and just say, I think we need more air marshals, that would be — that would not be a violation. They couldn't fire him for that. Justices Sotomayor, the Congress has dealt with that, I think, at various points in the Whistleblower Act, asking the question, is this too loose a standard, and so on. And every single time they've concluded not. Why? Because it is so hard for whistleblowers to come forward. The former government officials' brief at page 34 gives you data on this. There have been 203 cases that have gone to the Federal Circuit, whistleblower cases, and they've won a — whistleblowers have won a whopping three of them. There have been 56 cases that have gone to the MSPB. Again, whistleblowers have won three of them. So which way does that cut? It seems to me that cuts very much against you. In other words, whistleblowers are blowing the whistle all the time without any justification. That's, I thought, the government's point, that this requires — puts all the eggs in the basket of whatever the whistleblower happens to think is a good disclosure. I think not, Mr. Chief Justice. I think Congress each time has looked at this situation and has said every single time we need more whistleblowers to come forward, because that's the human fail-safe against a machine bureaucracy. Breyer. The Congress, I mean, I know people don't want to bring this up, but actually the staffs of Congress do consider these problems. They write them down, they say what the answer is, and the members are informed. Now, in this particular case, if you happen to read the conference reports, you get the answer. It says, what does it mean, not specifically prohibited by law? And then in both the House report and the Senate report. It tells you, go back to what we passed two years ago, namely the FOIA exemption, and that's what it means. And so that's why I got the thought that maybe that is what it means. And once you have that thought, you then see the country isn't going to fall apart because they wrote in the presidential exemption as well. So reading what the staffs actually wrote, perhaps I'm biased in that respect, believing that the members of Congress do think about these problems through staff, we have the answer to this case, leaving only open whether it is specific enough or not, and you make an argument that it's too general. Now, why shouldn't I follow that approach? So I think in general you should, Justice Breyer. That is, I think the conference report, and this is quoted in our brief at page 24, this is unlike almost any case I have seen before this Court in recent years in which the conference report so clearly gives you the answer to the question presented. Breyer, there are three reports. One is really for you, and that's the conference report. The Senate report is somewhat against you because it picks up the FOIA, the FOIA exemption and says that's what this means, even though you don't want to do that. Your Honor. I would read all of them, the House reports. Let me address the Senate report and the FOIA stuff. We think even under the FOIA standard, we don't think this is a particular matter, that that itself is too general. But Justice Breyer, there's two other things about that Senate report. Sotomayor, then you would say that under FOIA, I mean, assuming I follow Justice Breyer's approach, you would be leading to the conclusion that the government, if a FOIA request is made, the government has to disclose it. Because it doesn't – because it's not – the statute is not referring to a particular type of matter to be withheld. It's not particular enough for you. Well, I think that the language of 114R in the first notwithstanding clause is enough to basically just bracket FOIA. With respect to the – Just answer my question. You're saying the government couldn't withhold it under FOIA. No. I think that they could under FOIA, which has a very different situation, which it's empowering agencies to try and make certain exemptions. The Whistleblower Protection Act, I think, should be read with the reverse view in mind. Justice Breyer, the Senate report, the Senate language of the bill didn't even have the word specifically in it, so I'd urge you not to look at the Senate report when reading the word specifically. I agree there's some language where they talk about Robertson and the like, but actually page 154 has the text of the Senate bill and it doesn't even have specific in it. So that's why we would caution against using that as your template for deciding what specific is. Mr. Cahill, if you agree with the suggestion that this could be remedied by the President through an executive order, could I – do you agree with that? I do. Now, could I ask you how that would – how that would work out? Let's say – let's just take this example. Suppose the information in question concerns the layout in a particular airport. There's an area that's – that some employee of the TSA thinks is not secure. So that's the information. The information comes out that there's this problem with that particular airport and the TSA employee thinks that it's not being remedied, so this person wants to disclose it. Now, how would that – this information has to be disclosed to a certain number of people associated with that airport in order for the problem to be remedied. So how would that be dealt with in an executive order? The President has to issue an executive order about that specific thing and say this can be disclosed to security people at the airport, the local police, maintenance people who are going to fix that. How would you deal – how would that be dealt with? Two different ways. One is through the classification regime. The other is we've been talking about with Justice Breyer is through the non-classified SSI system. The President can pick up the SSI system in general under the B-8 exemption because it does deal with national defense and foreign affairs. There are parts of SSI which may not fall within it, but for the most part, things like this would. And so the President could designate that information subject to the exception to the Whistleblower Protection Act. I don't think he has to get into details about who it has to be shared with and who it doesn't, but he certainly could. With respect to the classification regime, he could also use the classified system to try and exempt this information as well. My friend on the other side says, oh, no, we can't share information with unclear people, foreign people and the like. As our brief at page 52 points out, the classification regime already is supple enough to provide that as long as it is in the defense of the homeland, as your hypothetical would. And more to the point, this Court's decision in Egan, which my friend cites, says that the classification regime is entirely a creature of the executive and can be modified at will. So if they really believe that you need to do this and share even classified information with unclear parties, they can do that. You know, but I think so we're not requiring some sort of specificity requirement either in the executive order or in the congressional solution that is so every jot and tittle or anything like that. I think it's more subtle. Scalia. Are there criminal penalties for violation of this statute? Not of SSI material, but there are of classified information. Yes. Kagan. Mr. Karczuk, can we go back to your legal argument, and let me make sure I understand it. You're saying don't use the revised Exemption 3 standard. 114R is narrower than that. Is that right? That's correct. So that all our Exemption 3 cases essentially become irrelevant. Is that right? Correct. But the not – and you're doing that based solely on the notwithstanding FOIA language. Is that right? Well, I am saying that. I wouldn't want to go too far. I don't think our argument depends on this. In other words, I think if you adopted the FOIA 3 standard, I still think that this language, which is detrimental to the security of transportation, is so capacious, heaven knows what it means. I mean, Mr. McLean, of course, thought what he was doing was promotion of the national security – of transportation security, not detrimental to it. I mean, it's very general language. It's absolutely true. And if you were writing on a clean slate, you might say, gosh, that's very general language. But we're not writing on a clean slate, and all our Exemption 3 cases seem to suggest that very general language can meet the bar. And so I'm just looking at there's this case, GTE-Sylvania, which was a statute that prohibited disclosure if disclosure was not fair in the circumstances and reasonably related to effectuating the purposes of the Consumer Product Safety Act. And we said that was enough, which is like you look at that and you say, why is it enough? But that's what we said. Right. But again, I think the FOIA context is very different than here, because FOIA is something about empowering agencies to restrict disclosures, as this Court's decision in Robertson said, that there was a preexisting legislative history about how they wanted to keep in place the hundred statutes or so that are anti-disclosure. The Whistleblower Act, I think, has the reverse idea in mind. And we see this textually, for those who are focused on the text, because the statute distinguishes, in the first part, between law, rule and regulation and law. And I think it's specifically prohibited by law. And what Congress is saying by that phrase in the context of this statute is, unlike FOIA, we're not about trying to empower agencies through general language. And I think this is the most natural way to understand what the statute says. I mean, I think when the word specific is used, I think the most helpful way of understanding  that there are two boxes, and detrimental to the security of transportation, sounds very much like, frankly, the TSA's mission statement, and not anything more than that. Kennedy, if Congress wanted to reach your position, and it had a choice of the words it would use in the second part of the statute, could it say statute instead of law, and it would just come out the same way? They certainly could use statute. And for purpose of this case in general, there would really be no difference. Well, I think there may arguably be a difference. This is found in the conference report language. They said we didn't use statute for a particular reason, which is because they wanted to sweep in not simply the statute in the U.S. Code, but also judicial interpretation. Oh, yeah, I'm sure that's what they all had in mind. I have no doubt of that. Justice Scalia, let me answer that, because I think, first of all, it is what Congress said in the conference report, which is, of course, what Congress votes on. And I understand many people don't like legislative history, but this is the apex of legislative history, as Chief Justice Rehnquist pointed out in the Simpson case. But does Congress vote on the conference report? They do vote on the conference report. The whole House? Each separate House? I believe that the answer to that is yes. But I'd also say the other thing about it is that I do think Congress actually what they were saying in the report made some sense, because the language is specifically prohibited by law. And I think what Congress was trying to do was sweep in things like the Trade Secrets Act, in which, even if that language might look general to a lay observer, the word's trade secrets have been fleshed out by courts over time. Maybe this doesn't make any sense, but you've been focusing on specifically as referring to the material that is covered. Can't it also refer to the prohibition specifically prohibited? In other words, it actually has to say, you cannot disclose this. You think it's specifying what this is. Couldn't it equally be well specifying how direct the ban must be, specifically prohibited? Right. So this is the argument in the government's reply brief which comes up for the first time. It's never been advanced by anyone. There's no support for it in the legislative history or I think even really the text of the statute. I think specifically refers to such disclosure. The phrase is, if such disclosure is not specifically prohibited by law. And so I think specifically is best read, is referring to such disclosure. Justice Breyer, back to your question about the Senate report in 102d3, which is what you were asking about earlier. It's really important, I think it's important that I say that the Court, excuse me, the Congress, when they passed the Whistleblower Act, rejected the idea that 102d3. Breyer, I think I'm talking about the report on the Whistleblower Act. Exactly. And the report on the Whistleblower Act, which it came two years after FOIA, the Senate committee said, those disclosures which are specifically exempted from disclosure by a statute which requires that matters be withheld from the public in such a manner as to leave no discretion on the issue, or by a statute which establishes particular criteria for withholding or refers to particular types of matters to be withheld. That is word for word. Right. And so, the Senate committee. Did the Senate vote on the Senate committee report? They did not. And if the Senate committee vote on the Senate committee report? I don't believe they do. No, they don't. Yes, I do. Justice Breyer, that Senate bill that that language is interpreting doesn't even have the word specific in it. So the actual bill the Senate is using is at page 154 of that report. It doesn't have it in it. And that's why I don't think it's the best guide for what specific means. Now, there is language, as you say, about 102d3, saying 102d3 would meet a specific prohibition. And Section 2306 of the actual Whistleblower Act, which, Justice Scalia, Congress voted on, exempts 102d3. Congress didn't buy this argument that the government has come up with right now that says that the Senate, the Senate report means that 102d3 was a specific prohibition because they added this language, quote, no provision of this chapter shall be construed to impair the authorities and responsibilities set forth in Section 102. And so Congress itself didn't believe this notion that 102d3 was specific. They wanted something that was specific. You might be right about that. But I — but what's bothering me is the more general question of driving an interpretive wedge between the FOIA exemption and the Whistleblower Act. I mean, that's going to get everybody good and mixed up, I think. Your Honor, I don't think our answer depends on that. That is, I think that this doesn't meet the FOIA. Yeah, but which, in your opinion, is the wiser way to go about it? I mean, assuming that this statute is not specific enough, which is the better way to go about it, to say the Whistleblower Act is special or to say interpret the both alike? I think that either is equally plausible because FOIA and the Whistleblower Protection Act are two very different statutes. This Court has said in Robertson that FOIA has two goals, one of which is about empowering agencies. Here, nobody has said that. The text of the Act never refers to empowering agencies, as Justice Scalia said. And Congress, with respect to the Whistleblower Act, is concerned about incentivizing them to come forward. That's what the members of Congress brief says, as well as the Office of Special Counsel brief. There's no fear about chilling FOIA requests. But that suggests that we take essentially the same language and read it two different ways, just dependent on our sense of the purpose of the underlying statute. Is that right? Well, I think that is available to the Court, but, again, you can use the FOIA standard. And there is no way that's going to be the same as the Whistleblower Protection Act. But I'm just asking if we – if your decoupling argument is essentially based on the notion that these two statutes have very different purposes, and therefore we can take those very different purposes and read the very, very similar language differently. Yes, Justice Kagan, for purposes of 114R, which, of course, bothers to specify only FOIA by saying notwithstanding FOIA, and then goes through the detrimental transportation security, doesn't specify the Whistleblower Act. Congress can, of course, deal with this by having a more general notwithstanding statute. I thought you were relying on text. I thought you were relying on the difference between law and law, rule, or regulation. Absolutely. That's our primary – It's not just purpose? Absolutely. So that's our primary argument. Thank you. I was worried for a minute. Thank you. Thank you. If the Court isn't worried with anything else, okay. Thank you, counsel. Mr. Gershengorn, you have four minutes left. Thank you, Mr. Chief Justice. I'd like to make two principal points. First, the question here is whether – the principal question we'd like the Court to decide is whether this disclosure was specifically prohibited by statute. We believe it is, and I think it's very interesting today. Justice Kagan, you pointed out that the precedent seems to require that. Justice Breyer, you pointed out that the legislative history in the Senate report seems to require that result. Justice Alito and Justice Kennedy, you pointed out that the practical effects of Respondent's position would seem to be grave. Mr. Chief Justice, you pointed out, and we completely agree, that the term specific, which is critical to their argument, could just as easily and, we think, properly mean express, which is what it means here. And, Justice Scalia, you asked about criminal penalties, but the statute itself does not provide criminal penalties, just as Mr. Kochel said, but it does provide civil penalties. We think in that situation, where you have the prior case law, the legislative history, the practical effects, and the plain text, that to say that a statute that mandates nondisclosure regulations does not specifically prohibit disclosure is just a very odd construction. The principal practical arguments we've heard today are that we don't have to worry because Congress could have had an executive order to make it work. We continue to think there is no dispute that the SSI system doesn't work under Mr. Kochel's construction. The idea that what Congress expected was a duplicative executive order to mimic the SSI scheme seems very odd to us and seems like a very odd way to construe congressional statutes. There was a concern here that there's this fox guarding the henhouse. That may be a concern with the Whistleblower Protection Act, but it has no application here where Congress itself mandated the nondisclosure regulations and did so knowing precisely what those regulations were when it did so. And finally, there's been some suggestion that the facts are in Mr. McClain's favor here. I would only say this. What Mr. McClain and what a TSA employee has before them is not a full picture of the threats, is not a full picture of the resource constraints, is not a full  that TSA has before them. It's not possessed with the same experience that TSA has. Scalia, I hate to interrupt you, but you worry me. I assume that if we find for your friend on the other side, the SSI regulations are not null and void. They would still apply to everybody except whistleblowers, isn't that right? Yes, Your Honor. It would be a violation for anybody to make those disclosures unless he's doing it in a whistleblower capacity. It would be, yes, Your Honor, but the standard in whistleblowing is do you reasonably believe that there's a specific and substantial danger to public safety. That is a judgment made on the information known reasonably to the employee and readily ascertainable. It is not a judgment made with the full picture of the security consequences. I suggest to the Court as a step back that the right way to think about this case is that in a situation where the statute mandates nondisclosure, just as if the chief justice were to tell the marshal to bar me from the courtroom, that it would be perfectly reasonable to say that the chief justice had expressly prohibited, specifically prohibited my presence in the courtroom, even if the marshal were one standing. Do we know how common that is, Mr. Gershengorn? Excuse me? How common it is to have regulations specifically mandated as opposed to authorized or permitted? Your Honor, we're not aware of any very many statutes like the SSI statute, where Congress has expressly mandated regulations. There are things like the 102d3 of the National Security Act, which generally says to the CIA director, protect sources and methods, and statutes like that. There are, of course, a wide range of nondisclosures, but we're focused principally on the nondisclosure provisions here. We respectfully ask the Court to hold that this is specifically prohibited by law and in particular by the SSI statute. We would never bar you from the courtroom. He wasn't talking about you. Thank you, counsel. The case is submitted.